IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

THOMAS GILMORE,                              )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )      Case No.  12-984-CV-W-ODS-SSA
                                             )
CAROLYN W. COLVIN,                           )
Acting Commissioner of Social Security,      )
                                             )
                    Defendant.               )

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

        Pending is Plaintiff's appeal of the Commissioner of Social Security's final
decision denying his application for disability and supplemental security income
benefits.  The Commissioner's decision is affirmed.


I. BACKGROUND

        Plaintiff was born September 12, 1959, he has a high school education, and prior
work experience as a street cleaner.  R. 26.  Plaintiff alleged disability due to
pancreatitis, depression, hepatitis, and diabetes.

        Plaintiff received treatment at the Truman Medical Center in October of 2008 for
chronic pancreatitis, diabetes mellitus, Hepatitis C, acid reflux, hypertension, history of
polysubstance abuse, and bipolar disorder.  R. 475.  Hospital records indicate that
Plaintiff previously had five surgeries for pancreatic pseudo cysts and other pancreatic
complications.  R. 475.  Plaintiff said he had never been sober and his last binge was a
week before coming to the hospital.  R. 475.

        Plaintiff went to Truman Medical Center Behavioral Health ("Truman Behavioral
Health") for mental health services and to receive medication.  R. 551-555.  On
September 16, 2008, sought mental health services for increased depression,

sleeplessness, worry, racing thoughts, and thoughts of using drugs again. R. 558. Plaintiff had visited Truman Behavioral Health for outpatient services in the past, but did not follow through with engaging in treatment beyond one or two clinic visits. R. 558.

December 1, 2008 treatment records at Truman Behavioral Health show an extensive substance abuse history, including drinking when he was nine years old. R. 553. During the evaluation, Plaintiff reported feeling irritable, forgetful, sad, anxious, and experiencing repetitive thoughts. R. 544. Plaintiff was diagnosed with major depression (recurrent) and alcohol dependence. R. 555.

A clinician noted that Plaintiff's follow though was poor and that he missed several appointments. R. 555. The clinician noted "[e]ven though client verbalized wanting to get medications to stabilize his mood; Clinician questions client's true motivation for services." R. 555. Plaintiff did not indicate any pain related concerns at the time of the interview. R. 555.

On March 4, 2009, Plaintiff received treatment at Truman Behavioral Health. R. 613. Plaintiff was referred there in June 2008, but missed several appointments. R. 613. Plaintiff reported obsessing over cleaning, ironing, straightening furniture and clothes, hand washing, and inability to touch door knobs. R. 613. The assessment indicates significant obsessive compulsive disorder symptoms and a diagnosis of anxiety. R. 614.

On August 17, 2009, Plaintiff went to Truman Behavioral Health complaining of anxiety and depressed mood. R. 628. Plaintiff reported suffering from anxiety, repetitive thoughts, and uncontrollable ritualistic behavior. R. 628. Plaintiff returned to Truman Behavioral Health on November 19, 2009, December 1, 2009, and March 2010, reporting the same symptoms. R. 633, 643, 648

On June 15, 2010, Plaintiff sought treatment at Swope Health Services for bilateral knee pain. R. 662. The provider noted diabetes mellitus Type II and osteoarthritis. R. 663. Plaintiff returned once more (no date provided in the Record) and received an assessment of diabetes mellitus Type II, Hepatitis C, and abnormal gait. R. 665.

On April 9, 2010, Plaintiff underwent a psychological/clinical assessment at Swope Health Services. R. 670-676. Plaintiff complained of depression, intrusive

2

thoughts, and obsessive compulsive disorder. R. 671. Plaintiff's physical health was noted as having Hepatitis C, diabetes, and low blood sugar. R. 671. Plaintiff complained that his knees hurt due to "arthritis or something they're sore all the time." R. 671. He rated the pain as a 5 on a scale of 10 being the worst. R. 671. Plaintiff was diagnosed with major depressive disorder (recurrent, severe with psychotic features), obsessive compulsive disorder, Hepatitis C, and diabetes. R. 672.

Plaintiff underwent a radiology consultation on April 14, 2010, at Swope Health Services. R. 669. The impressions were as follows: pelvis and hips—negative study; right shoulder—degenerative osteoarthritis, post surgical changes of distal clavicle; cervical spine—minimal degenerative osteoarthritis. R. 669.

Plaintiff went to Swope on August 11, 2010, with an assessment of abnormal gait with the right leg partially thrown to lateral side and forward. R. 696. Records noted that Plaintiff's right shoulder was lower than his left. R. 696. Plaintiff was diagnosed with diabetes mellitus Type II, osteoarthritis, chronic pancreatic, and muscle weakness. R. 697.

On September 30, 2010, Plaintiff received x-rays at St. Luke's Imaging Center that revealed a mild right lateral compartment osteoarthrosis manifested by a small central osteophyte and no significant joint space narrowing. R. 703. There was no radiographic evidence of a significant left knee osteoarthrosis. R. 703.

On October 5, 2010, Plaintiff was examined by Kala Danushkodi, M.D., for right knee pain and bilateral shoulder pain. R. 712. Dr. Danushkodi diagnosed Plaintiff with chronic pancreatitis, arthritic pain in right hip and shoulder rotator cuff tendinopathy, and bipolar disorder. R. 713. Dr. Danushkodi opined that Plaintiff has no restrictions to sitting, standing or walking and Plaintiff can lift, carry, and handle objects 10 to 20 pounds. R. 713. She opined that Plaintiff should be restricted with repetitive overhead activities on the right upper extremity, and stated there were no restrictions to hearing, speaking, traveling, or vision. R. 713. On October 12, 2010, Dr. Danushkodi completed a medical sources statement and opined that Plaintiff could lift up to 10 pounds frequently and up to 20 pounds occasionally. R. 706. She opined that Plaintiff could sit for 6 hours at a time, and stand or walk for 4 hours at a time. R. 707. She further indicated that Plaintiff could occasionally climb ladders or scaffolds, balance, stoop,

3

kneel, crouch, crawl and could frequently climb stairs.  R. 709.  Finally, Plaintiff was limited to occasionally reaching, handling, fingering, feeling, pushing, and pulling with his right hand.  R. 708.

An administrative hearing was held on August 25, 2010.  R. 22-51.  During the hearing, Plaintiff testified that he could sit for 15-20 minutes, stand for 30 minutes, and has to lie down three times a day.  R. 30-31.  Plaintiff can walk about a block to a block and a half and can lift 15-20 pounds.  R. 31, 38.  Plaintiff has a history of alcohol abuse but has not consumed alcohol since November 1, 2009.  R. 32.  Plaintiff cooks for himself and three other men, cleans, and does his laundry for three other guys.  R. 35.

The administrative law judge ("ALJ") issued his decision on November 5, 2010.  R. 19.  At step one of the five-step sequential process, the ALJ determined Plaintiff has not engaged in substantial gainful activity since November 2, 2009, the alleged onset date.  At step two, the ALJ found Plaintiff has the following severe impairments: degenerative joint disease in the right shoulder and cervical spine, diabetes and depression.  R. 10.  At step three, the ALJ concluded that Plaintiff did not have a listed impairment.  R. 11.  At steps four and five, the ALJ concluded Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to occasional postural activities, no reaching overhead, and no temperature extremes.  He is also limited to simple routine tasks with only occasional changes in work process, no more than simple decision making, no supervisory tasks, and only occasional interaction with the public.

R. 13.  Next, the ALJ found, based on the vocational expert's testimony, that Plaintiff is unable to perform any past relevant work, but considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  R. 17.  Finally, the ALJ concluded Plaintiff is not disabled.  R. 18.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial

4

evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A. Dr. Danushkodi's Opinion

Plaintiff argues the RFC is not supported by competent medical evidence because the ALJ discounted certain right arm limitations suggested by Dr. Danushkodi.[1] The Court disagrees.

The ALJ gave great weight to Dr. Danushkodi's medical opinion with the exception of her limitations on the use of the right arm. Specifically, the ALJ found that the evidence does not support limitations on reaching, fingering, handling, or feeling with the right arm. R. 16. The ALJ properly considered Dr. Danushkodi's opinion and was entitled to discount certain restrictions relating to the use of Plaintiff's right arm. First, Plaintiff only saw Dr. Danushkodi once for a consultative evaluation prior to completing a Medical Source Statement—Physical. Standing alone, a one-time evaluation by a consultative examiner is not entitled to controlling weight. *See Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011). Second, the Record shows that Plaintiff received limited treatment for the right arm. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if [claimant's] pain was as severe as she alleges, she would have sought regular medical treatment."). Third, the ALJ properly noted that Dr. Danushkodi's evaluation of Plaintiff revealed grip strength of

---

[1] Plaintiff also argues that the ALJ's RFC assessment was "based on the ALJ's uninformed lay opinion." Pl's Brief (Doc. # 13), at 29-31. This argument is without merit. The ALJ properly considered Dr. Danushkodi's opinion and appropriately discounted the restrictions suggested relating to Plaintiff's right arm because they were inconsistent with the Record as a whole.

30 pounds on the right and 40 pounds on the left; sensation was intact; and no impairment of the hand range of motion was noted. Dr. Danushkodi's examination of Plaintiff's right shoulder also revealed only mild limitation in range of motion with abduction at 90 degrees and forward flexion at 100 degrees, and slightly decreased strength. R. 713. This evidence does not support a finding of disability. *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is not supported by diagnoses based on objective evidence will not support a finding of disability."). Accordingly, the Court finds that the RFC was supported by competent medical evidence, and that the ALJ properly weighed Dr. Danushkodi's opinion.

## B. Duty to Develop the Record

Next, Plaintiff argues the ALJ breached her duty to fully develop the record by not scheduling a supplemental hearing to obtain vocational exert ("VE") testimony to determine whether there would be work available to a hypothetical individual having the precise RFC limitations set forth in Dr. Danushkodi's report. The Court disagrees. As previously discussed, the ALJ assigned great weight to Dr. Danushkodi's opinion with the exception of the right arm limitations the ALJ found inconsistent with the Record. The Eighth Circuit has held that "an ALJ may omit alleged impairments from a hypothetical question when the record does not support the claimant's contention that his impairments 'significantly restricted his ability to perform gainful employment.'" *Owen v. Astrue*, 551 F.3d 792, 803 (8th Cir. 2008) (quoting *Eurom v. Chater*, 56 F.3d 68 (8th Cir. 1995)).

Plaintiff also contends that if the ALJ needed clarification with respect to Dr. Danushkodi's report then she could have sought clarification either by written interrogatories or by obtaining testimony from Dr. Danushkodi at a supplemental hearing. This argument is without merit because there is no indication that the ALJ found Dr. Danushkodi's opinion unclear or that she required clarification on any point. *See, e.g., Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[A] lack of medical evidence to support a doctor's opinion does not equate to underdevelopment of the record as to a claimant's disability . . . ."). *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir.

2005) ("[T]he ALJ discounted the opinions because they were inconsistent with the other substantial evidence.  In such cases, the ALJ may discount an opinion without seeking clarification.").  Accordingly, the Court finds that ALJ did not breach her duty to develop the record.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision.  The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

                                        /s/ Ortrie D. Smith
                                        ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 29, 2013                      UNITED STATES DISTRICT COURT